# United States Court of Appeals
## For the First Circuit

No. 03-1102

IN RE: JOHN J. DIAMOND, III,
Debtor,

JOHN J. DIAMOND, III,
Plaintiff, Appellant,

v.

PREMIER CAPITAL, INC. and
RANDALL L. PRATT,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stapleton,* Senior Circuit Judge,
and Howard, Circuit Judge.

Terrie Harman, with whom Watson, Bosen, Harman, Venci & Lemire, PA and Elizabeth Cazden, were on brief, for appellant.
James S. LaMontagne, with whom Sheehan Phinney Bass + Green, was on brief, for appellee Randall L. Pratt.
Michael S. Askenaizer, with whom Law Office of Michael S. Askenaizer, PLLC, was on brief, for appellee Premier Capital, Inc.

October 9, 2003

---

*  Of the Third Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  John J. Diamond, III, debtor and plaintiff below, appeals the district court's affirmance of the bankruptcy court's dismissal of his complaint for failure to state a claim.  After careful review, we reverse the district court's dismissal and remand for further proceedings.

## I.  Background

Diamond, a seventeen year veteran of the real estate industry, filed a voluntary Chapter 13 bankruptcy petition in October 2000 that he later converted to a Chapter 7 proceeding. One unsecured creditor, Premier Capital, Inc. ("Premier"), filed an adversary proceeding to deny Diamond a discharge pursuant to 11 U.S.C. § 727 on the basis that Diamond had concealed assets and made false oaths.

While negotiating a settlement in the discharge proceeding, Premier's attorney, Randall Pratt, allegedly told Diamond's attorney that if the dischargeability issue was not resolved in Premier's favor, he would take action at the New Hampshire Real Estate Commission to revoke Diamond's real estate broker's license.  Diamond agreed to Premier's proposed settlement, but the bankruptcy court rejected the settlement and denied Premier's complaint on all grounds.

Diamond filed a bankruptcy court complaint against both Premier and Pratt alleging that Pratt's statement was an improper attempt to collect, assess, or recover a debt by using coercive

negotiation tactics in violation of the Bankruptcy Code's ("Code") automatic stay.  <u>See</u> 11 U.S.C. § 362(a) (2000).  Diamond sought actual damages, costs, attorney's fees, and punitive damages.

Premier and Pratt moved to dismiss the complaint on the grounds that Diamond failed to state a claim upon which relief could be granted.  The bankruptcy court refused to construe Pratt's statement as a violation of the automatic stay, holding that "lawyers have to be free to -- I can't say use every tactic, but use tactics within bounds to try to negotiate the best deal for their client."  Accepting as true the facts alleged in Diamond's complaint, the bankruptcy court concluded Pratt's statement did not "go over the line" and dismissed the complaint.  Diamond appealed to the district court, which affirmed the dismissal.  He now appeals the dismissal to this Court.

## II.  Analysis

Diamond argues that Premier's statement that it would seek revocation of his real estate license, which occurred during negotiations to settle the adversary proceeding regarding discharge, constituted coercive tactics in violation of the automatic stay provision of the Bankruptcy Code.  According to Diamond, the district court erred in dismissing his complaint on the basis that the statement could not be considered coercive.  We review the dismissal for failure to state a claim de novo, assuming the truth of all well-pleaded material facts and indulging all

-3-

reasonable inferences in favor of Diamond. <u>Arruda</u> v. <u>Sears,</u> <u>Roebuck & Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002).

## A. <u>Settlement Negotiations Concerning Denial of Discharge</u>

We begin with the issue of whether negotiations regarding a § 727 challenge to discharge are ever permissible, or if such negotiations should be considered a per se violation of the automatic stay.[1]

"The automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors." <u>Jamo</u> v. <u>Katahdin</u> <u>Federal Credit Union</u> (<u>In re Jamo</u>), 283 F.3d 392, 398 (1st Cir. 2002). Under 11 U.S.C. § 362(a)(6), the filing of a bankruptcy petition operates as an automatic stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." Section 727 is a specific exemption from the automatic stay to allow for a challenge to discharge.

Whether settlement negotiations pertaining to a challenge to discharge violate the automatic stay is an issue of first impression in this Court. Recently, however, we held that, "while the automatic stay is in effect, a creditor may engage in post-petition negotiations pertaining to a bankruptcy-related

---

[1] Although Diamond's brief presents arguments that the Court should adopt a per se rule that negotiations about discharge violate the automatic stay, we do not believe this is a matter in dispute. At oral arguments and indeed in parts of his brief, Diamond's attorney clearly stated that negotiations about a discharge are allowed if such negotiations are not coercive. Thus, Diamond and Premier agree on this issue.

-4-

reaffirmation agreement so long as the creditor does not engage in coercive or harassing tactics." Jamo, 283 F.3d at 399. We agree with the parties that it makes sense to extend the Jamo rule and adopt the majority approach allowing settlement negotiations in § 727 discharge proceedings. See generally Terrence L. Michael and Michael R. Pacewicz, Settling Objections to Discharge in Bankruptcy Cases: An Unsettling Look at Very Unsettled Law, 37 Tulsa L. Rev. 637 (2002) (reviewing the approaches to the settlement of § 727 proceedings and indicating that the majority of courts allow settlement on a case-by-case basis). Absent controversy on the point, we need not belabor the issue.

## B. **Coerciveness of the Threat**

Having agreed with the parties that negotiations regarding discharge are not per se violations of the automatic stay, we turn to the settlement negotiations in this case to determine whether Premier's statement regarding Diamond's real estate license could have constituted impermissible "coercion or harassment." Jamo, 283 F.3d at 399.[2] A 12(b)(6) dismissal would be appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Medina-Claudio v. Rodríguez-Mateo, 292

---

[2] Since the proposed settlement was rejected and Diamond ultimately prevailed in the discharge proceeding, we need not consider the merits of the settlement itself. The only issue here is whether the alleged statement could constitute an impermissible negotiation tactic.

F.3d 31, 34 (1st Cir. 2002) (internal quotation and citation omitted).

In evaluating the coerciveness of a statement made in the course of negotiations, this Court has not enunciated a specific test, but does look at the immediateness of any threatened action and the context in which a statement is made. See Jamo, 283 F.3d at 402 (citing In re Brown, 851 F.2d 81, 86 (3d Cir. 1988)) (considering creditor's references to foreclosure in context and deciding they were not coercive because, rather than signaling "immediate action," they indicated that foreclosure was not "on the [creditor's] agenda").

Here, Premier's alleged statement could "reasonably be deemed tantamount to a threat" of immediate action against Diamond. Jamo, 283 F.3d at 402. Premier's statement placed Diamond between a rock and a hard place. If he prevailed in the § 727 proceeding, as he ultimately did, he would face an administrative proceeding and quite possibly the revocation of his real estate license, the source of his livelihood. If Premier prevailed in the § 727 proceeding, then Diamond would suffer because he would not obtain a discharge of his debts. Thus, Diamond would lose either way. In this situation, where an unsecured creditor's statement functionally forces the debtor to treat a professional license as

collateral, a dismissal on the pleadings is unacceptable because the statement could be found to be coercive by a trier of fact.[3]

Premier presents several arguments against the statement's coerciveness, but we find none of them convincing. First, Premier argues that the statement, which was a one-time communication,[4] did not threaten immediate action because it was conditioned on the outcome of the adversary proceeding. We cannot agree. Filing of the administrative proceeding to have Diamond's license revoked at the time of the statement likely would have violated the automatic stay, thus making truly instantaneous action to that effect risky if not impossible. See 11 U.S.C. § 362(a)(1) (barring initiation of "administrative or other proceeding against the debtor" once bankruptcy petition has been filed). In light of

---

[3] In <u>Jamo</u>, the Court acknowledged that "a Chapter 7 debtor is not inoculated against the necessity for making hard choices" and that "[b]ankruptcy, as life itself, is a series of tradeoffs." <u>Id.</u> at 400. The <u>Jamo</u> Court also noted that "reaffirmation agreements are consensual, and a debtor always has the option of walking away from an unattractive proposal." <u>Id.</u> A debtor can either reaffirm his secured debt and keep the collateral or surrender the collateral and receive complete debt relief. Although it may appear at first blush that Diamond would face a similar dilemma, we note that Diamond's real estate license was not collateral for the unsecured debt to Premier. Thus, Premier cannot put him in a position where his license would be the functional equivalent to collateral, such that he would choose to either keep it and repay his debt to Premier or surrender it in exchange for a discharge.

[4] The fact that the statement was made once may in fact weigh in favor of coerciveness. If settlement occurred soon thereafter -- something that is unclear on this undeveloped record -- then it was perhaps such a coercive statement that it only needed to be communicated once.

the procedural block to an immediate filing of revocation proceedings, the statement threatened action that was as immediate as possible, and sufficiently imminent to be potentially coercive.

Second, Premier argues that the communication could not be considered coercive because it occurred between counsel during an administrative proceeding, not reaffirmation. The fact that the statement was made by Premier's attorney to Diamond's attorney does not detract from its coerciveness. In Jamo, the statements at issue were also between counsel, but the Jamo Court did not find this fact relevant to the coerciveness determination. Id. at 402. Similarly, we do not find it determinative that the statement was made to Diamond's counsel rather than to Diamond himself, particularly where counsel swiftly communicated the threat to his client. Although we doubt Premier's proposition that statements made in an adversary context should be given greater leniency, we leave that issue for the district court's consideration on remand.

Finally, Premier would have us find that it was unreasonable for Diamond to perceive the threat as coercive, and further that Diamond's complaint is insufficient because it failed to allege Premier lacked a good faith basis for a complaint to the Real Estate Commission.[5] If the threat was an empty one -- in

---

[5] Premier relies on the New Hampshire Rules of Professional Conduct ("New Hampshire Rules") in its argument that Diamond had to allege lack of a good faith basis, and urges this Court to turn to the Rules as authority for what constitutes coercive behavior. Although the district court's order referred to the NH Rules and

other words if it lacked a good faith basis -- we do not think that Premier would have made it at all.  Further, Premier cannot have it both ways, arguing it had a good faith basis for making the threat while simultaneously claiming that the threat was an empty one.

We conclude that the alleged statement could be found coercive, and Diamond could indeed prove a set of facts -- that Premier made the statement and that it coerced Diamond to settle -- that would entitle him to relief.  We note, however, that because Diamond would have had to defend against the § 727 discharge proceeding regardless of the statement's coerciveness, his damages are unclear.  The remedy issue is one the district court should examine more closely on remand.

### III.  Conclusion

For the foregoing reasons, we reverse the dismissal of Diamond's complaint and remand to the district court for further proceedings consistent with this opinion.

**Reversed and remanded**.

------

the American Bar Association's Model Rules of Professional Conduct ("Model Rules"), it did so only as an illustration of what reasonable people might view as coercive.  No authority is presented to support use of the New Hampshire Rules or the Model Rules as the guideposts for determining if a statement made during settlement negotiations is coercive.  We need not decide here if such an approach should be adopted in cases involving alleged violations of the automatic stay.