William B. LUMB, Debtor.

William B. Lumb, Plaintiff–Appellant,

v.

Nahabet Cimenian, Defendant–
Appellee.

BAP No. EP 08–066.
Bankruptcy No. 01–21536–JBH.
Adversary No. 08–02029–JBH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 23, 2009.

Joseph L. Goodman, Esq., on brief for Plaintiff–Appellant.

George Georgountzos, Esq., on brief for Defendant–Appellee.

Before VOTOLATO, VAUGHN, and CARLO, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

William B. Lumb (the "Debtor") appeals from a bankruptcy court order (the "Order") granting defendant Nahabet Cimenian's ("Cimenian") motion to dismiss the Debtor's complaint for failure to state a claim upon which relief may be granted. Cimenian has moved for fees and costs for a frivolous appeal. For the reasons set forth below, we **REVERSE** the Order and **DENY** Cimenian's motion for costs and fees.

## BACKGROUND

In 1997, the Debtor, Cimenian and Allen Fernald formed a partnership to purchase claims in the bankruptcy estate of Cimenian's mother-in-law, Catherine Petit ("Petit"). The claims reflected interests in real property located at 1 Fourth Street, Old Orchard Beach, Maine (the "Property"). The partnership decided that the Debtor alone would hold title to the Property. The details of the partnership agreement are unclear, with no provisions regarding when the Property would be sold, who would pay expenses or whether the partners could buy each other out. Additionally, there was no prohibition against the Debtor mortgaging the Property. Thereafter, the Debtor granted a mortgage on the Property. He subsequently sold the Property and gave none of the profits from the sale to Cimenian.

Thereafter, the Debtor filed a chapter 7 petition. Cimenian hired an attorney to bring a claim against the Debtor regarding the sale of the Property, but his attorney withdrew because Cimenian made several unethical requests of him.[1] On February 1, 2002, before Cimenian's attorney withdrew, and before the bankruptcy court granted the Debtor his discharge, Cimenian's attorney sent a letter to the Debtor's attorney on behalf of Cimenian (the "Gannett letter"), in which he stated that the Debtor's attorney should "[p]lease advise if your client wishes to resolve the matters consistent with our recent conversation on January 31, 2002. [Cimenian] intends to pursue his claims against [the Debtor's wife] immediately unless a resolution is reached this weekend." Cimenian did not obtain subsequent counsel, and he filed no claim against the Debtor's bankruptcy estate. On March 29, 2002, the bankruptcy court granted the Debtor a discharge. Although there is nothing in the record to demonstrate that Cimenian received notice of the discharge,[2] he does not raise it as an issue.

Cimenian subsequently filed a nine-count complaint against Carolle Lumb (the "Debtor's wife") in Maine Superior Court

---

1. The Maine Supreme Judicial Court made this finding in its order, described below, affirming the Maine Superior Court's award of attorneys' fees.

2. In his brief, the Debtor cites to the facts alleged in his bankruptcy court amended complaint, described below, in which he stated that Cimenian received notice of the discharge. Allegations do not constitute evidence, but, again, notice is not an issue here.

based on the transactions involving the Property. The state court entered summary judgment in favor of the Debtor's wife on some counts, and conducted a non-jury trial on the remaining counts.

The trial revealed that the Debtor's wife was a cosigner on the mortgage for the Property, but never held title in it. She had no role in the Debtor's acquisition of the Property or in its subsequent sale. She did not sign the deed from the Debtor conveying the Property to the subsequent owners. Following the trial, the court entered judgment for the Debtor's wife on all remaining counts of the complaint, finding Cimenian's suit to be without merit. The court found that none of the remaining counts had "even the slightest [ ] merit." Cimenian did not appeal the court's judgment. The court subsequently granted attorney fees to the Debtor's wife in the amount of $50,146.25, which the Maine Supreme Judicial Court affirmed in February, 2008.

In its decision, the Maine Supreme Judicial Court stated that "Cimenian was not able to bring claims against [the Debtor] because [his] debts had been discharged in bankruptcy. [Cimenian's] alleged claims against [the Debtor] arose out of [the Debtor's] ownership and sale of the beach house. Cimenian brought these claims against [the Debtor's wife] even though she never held title to or any ownership interest in the property." Additionally, the Maine Supreme Judicial Court quoted the Maine Superior Court's findings that

the claims brought by Cimenian were "baseless, frivolous and without merit," that "[t]here [were] not good grounds to support [Cimenian's] case and it was [intended] to harass [the Debtor]," and that "[t]his is one of the few cases where 'most extraordinary circumstances' exist and attorney's fees should be awarded." Additionally, the Maine Supreme Judicial Court upheld findings that "Cimenian testified in court untruthfully" and stated that "testifying untruthfully about matters relevant to the issues being litigated in bad faith can constitute extraordinary circumstances" warranting the imposition of attorney's fees.

Two months later, the Debtor commenced an adversary proceeding against Cimenian for an alleged violation of the discharge injunction.[3] The Debtor subsequently filed an amended complaint, which is what the bankruptcy court considered at the hearing on the motion to dismiss.

In his amended complaint, the Debtor alleged that Cimenian had brought the state court suit against the Debtor's wife "to harass and pursue the Debtor," and that Cimenian's actions constituted a willful violation of the discharge injunction as set forth in 11 U.S.C. § 727.[4] The Debtor attached the following documents to the amended complaint in support of these allegations: (1) Cimenian's Maine Superior Court complaint, (2) Maine Superior Court order granting attorney fees to the Debtor's wife, (3) the Gannett letter, and (4)

---

3. The Debtor also brought suit against Cimenian's attorneys and his attorneys' places of business alleging violations of the discharge injunction. Cimenian's attorneys and their places of business filed motions to dismiss the adversary proceeding, which the court granted. The grounds for dismissal are not before the Panel, as the Debtor did not include in his appendix copies of the motions to dismiss, the orders granting dismissal or the transcript of the hearing held.

4. Unless otherwise indicated, all references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, et seq. All references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

Maine Supreme Judicial Court decision affirming the Maine Superior Court's grant of attorney fees. The facts the Debtor alleged in the amended complaint included:

(1) Cimenian intended to pursue a claim against the Debtor in his bankruptcy case, but did not because his lawyer withdrew from representation;

(2) Cimenian's lawyer sent a letter on behalf of Cimenian to the Debtor (via his attorney) in which he stated that unless "your client" resolved the matter with Cimenian, Cimenian would pursue claims against the Debtor's wife;

(3) the Debtor's attorney represented only the Debtor and not the Debtor's wife at the time Cimenian's lawyer sent the letter;

(4) the bankruptcy court granted the Debtor a discharge;

(5) Cimenian received notice of the Debtor's discharge;

(6) Cimenian brought suit against the Debtor's wife in state court to collect on the claim he held against the Debtor after the Debtor obtained his discharge;

(7) the Maine Superior Court entered judgment in favor of the Debtor's wife, concluding that the suit was without "even the slightest [ ] merit;" and

(8) the Maine Superior Court subsequently granted attorney fees to the Debtor's wife, which the Maine Supreme Judicial Court affirmed.

Cimenian moved to dismiss the amended complaint for failure to state a claim upon which relief may be granted. In the memorandum in support of his motion, Cimenian argued that bringing suit against the Debtor's wife did not violate the discharge injunction. Cimenian further argued that the Gannett letter referred only to his claims against the Debtor's wife, although he acknowledged that Attorney Goodman represented both the Debtor and the Debtor's wife at the time Attorney Gannett sent the letter. The Debtor objected, arguing that the facts alleged in his amended complaint indicate that Cimenian's only reason for bringing suit against the Debtor's wife was to recover for his alleged claims against the Debtor for the Debtor's actions relating to the Property.

The bankruptcy court held a hearing on the matter, at the conclusion of which it dismissed the amended complaint, concluding that "there is not sufficient basis to go forward." Specifically, the bankruptcy court stated that the only evidence the Debtor had was Gannett's letter, sent prior to the Debtor's discharge, in which Gannett stated that Cimenian would sue the Debtor's wife if the Debtor did not resolve Cimenian's claim against him. The bankruptcy court noted that the Debtor had not proffered any evidence that Cimenian had made a similar statement post-discharge.

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order dismissing a complaint is final where the court has dismissed the complaint as to all parties. *See Barrett ex rel. Estate of Barrett v. U.S.*, 462 F.3d 28, 32–33 (1st Cir.2006). Here, the Order is final because no defendants remained; the bankruptcy court had previously dismissed the complaint as to the other defendants.

**6**

## STANDARD OF REVIEW

■ We review the bankruptcy court's dismissal of the Debtor's complaint *de novo. See Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir.2008). "[W]e assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Id.*

## DISCUSSION

The bankruptcy court dismissed the Debtor's complaint because there was "not sufficient basis to go forward." Specifically, the bankruptcy court stated that the Debtor had evidence only of Cimenian threatening to sue the Debtor's wife prior to the Debtor's discharge, and had no evidence pertaining to any such threat subsequent to the Debtor's discharge.

### A. Dismissal of the Debtor's Complaint

#### 1. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief," *id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929,[5] 550 U.S. 544, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)), and must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Morales–Tañon v. Puerto Rico Elec. Power Authority*, 524 F.3d 15, 18 (1st Cir.2008) (citing *Twombly*, 127 S.Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964–65 (cita-

tions omitted). "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir.2005)).

#### 2. The Discharge Injunction

■ A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2); *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 17 (1st Cir.2006). A bankruptcy court may invoke § 105 to enforce the discharge injunction imposed by § 524, and order damages if the circumstances so require. *In re Pratt*, 462 F.3d at 17. A creditor violates the discharge injunction (or automatic stay) when it (1) has notice of the debtor's discharge (or, in the case of the automatic stay, has notice of the bankruptcy filing); (2) intended the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor. *In re Pratt*, 462 F.3d at 19, 21; *Winslow v. Salem Five Mortgage Co., LLC (In re Winslow)*, 391 B.R. 212, 215 (Bankr.D.Me.2008); *In re Schlichtmann*, 375 B.R. 41, 95 (Bankr.D.Mass.2007).

■ In *Pratt*, the First Circuit emphasized that courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances. *In re Pratt*,

---

**5.** All subsequent citations to *Twombly* are to the S.Ct. cite, as pin point cites are not available for the U.S. cite.

462 F.3d at 19; *see also In re Schlichtmann*, 375 B.R. at 95. Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor. *See id.; Curtis v. Salem Five Mortgage Co., LLC (In re Curtis)*, 359 B.R. 356 (1st Cir. BAP 2007). The determination is fact specific and made on a case by case basis, as the line between forceful negotiation and improper coercion is not always clear.[6] *In re Pratt*, 462 F.3d at 19; *In re Schlichtmann*, 375 B.R. at 95.

■■■ An action is coercive where it is "tantamount to a threat," *Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 402 (1st Cir.2002), or places the debtor "between a rock and hard place" in which he would lose either way. *Diamond v. Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224, 227–28 (1st Cir.2003).[7] Courts consider the "immediateness" of the threatened action as well as the context in which it occurred. *In re Diamond*, 346 F.3d at 227. A creditor's actions may be improperly coercive even in exercising legitimate state rights, if the actions impinge upon "the important federal interest served by the discharge injunction."[8] *In re Pratt*, 462 F.3d at 19.

■■■ To succeed on a complaint alleging a violation of the discharge injunction, a debtor need not allege that the creditor made an explicit threat; the objective test requires no such "smoking gun." *See id.* However, it bears repeating that a creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge. *See In re Schlichtmann*, 375 B.R. at 97. Additionally, a creditor's use of leverage during negotiations is not necessarily coercive. *In re Jamo*, 283 F.3d at 401. Courts will not place "a thumb on the scales" to off-set a creditor's superior bargaining power. *Id.*

### 3. The Debtor's Amended Complaint

■■■ The allegations of Debtor's amended complaint, which the court must assume to be true for purposes of a Rule 12(b)(6) motion, *see Thomas*, 542 F.3d at 948, are sufficient to "raise the right to relief above the speculative level" and allege "a plausible entitlement to relief." *See Twombly*, 127 S.Ct. at 1967; *Morales–Tañon*, 524 F.3d at 18. More specifically,

---

6. Although there is no question that the debtor bears the burden of proving a creditor violated the discharge injunction, in this circuit there is a question as to whether the debtor must prove such violation by a preponderance of the evidence or by clear and convincing evidence. *See In re Pratt*, 462 F.3d at 21; *In re Al–Jiboury*, 344 B.R. 218, 223 (Bankr.D.Mass.2006). However, this question is of no relevance in the instant appeal, as a Rule 12(b)(6) motion does not raise questions regarding sufficiency of the evidence.

7. *Jamo* and *Diamond* involve alleged violations of the automatic stay. These cases are relevant to the Panel's inquiry here, as the same issue of coercion arises in both scenarios, and the First Circuit treats stay violations and discharge violations interchangeably with respect to the issue of coercion. *See In re Pratt*, 462 F.3d at 19, 21 (citing and discussing cases involving determinations of coercion in the context of alleged automatic stay violations).

8. In *Pratt*, the First Circuit concluded that the creditor's actions were objectively coercive under the circumstances where the creditor refused to release the lien on a car that the debtors had "surrendered" until the debtors paid the loan balance in full, as allowed under state law. *Id.* at 16, 19. There, the creditor chose not to repossess the car, and when the car later became inoperable the debtors needed the creditor to release the lien so they could "junk" the car. *Id.* at 16.

the Debtor set forth factual allegations respecting each material element necessary to recover for violation of the discharge injunction, *see Gagliardi*, 513 F.3d at 305, namely that Cimenian (1) had notice of the Debtor's discharge, (2) intended the actions that violated the discharge injunction, and (3) acted in a way that improperly coerced or harassed the Debtor. *See In re Pratt*, 462 F.3d at 17.

In dismissing the Debtor's amended complaint, the bankruptcy court focused on the fact that the Debtor did not allege that Cimenian restated his threat[9] after the court discharged the Debtor. The *Pratt* test has no such requirement, however. Under the objective test for coercion, the Debtor need only prove that Cimenian's actions had a coercive effect upon him. *See id.* at 19. That is, the Debtor need only prove that Cimenian sued the Debtor's wife in an effort to collect on his claim against the Debtor. *See id.; In re Schlichtmann*, 375 B.R. at 97. Although we are not aware of any case in which a creditor was found to have violated the discharge injunction by virtue of actions taken against a third party, we note that the prohibition in § 524(a)(2) is not limited to actions by creditors *against the debtor* to collect on a discharged debt. The plain language of § 524(a)(2) simply bars acts by creditors to collect on discharged debt. *See* § 524(a)(2).

The Debtor's allegation that Cimenian brought suit against the Debtor's wife "to harass and pursue" him is plausible given that the Debtor was arguably affected by the suit against his wife and the $50,000.00 in legal fees incurred in defending against

it, and that Cimenian would have dropped the suit if the Debtor paid the discharged debt. *See Twombly*, 127 S.Ct. at 1967. The Maine Supreme Judicial Court could not have been more emphatic that Cimenian's claims against the Debtor's wife were utterly without merit, thus supporting the Debtor's argument that the sole purpose of the suit was to collect on the discharged debt. Although it may be tempting to conclude that the meritlessness of Cimenian's suit against the Debtor's wife diminished or even eliminated its coerciveness (i.e., it was an empty threat because Cimenian was sure to lose, and therefore the suit had little or no coercive effect), it is important to remember that the legal fees in defending against Cimenian's suit were in excess of $50,000.00. Moreover, it would be wrong to dismiss the coercive effect of the suit in light of the fact that the state court later awarded fees to the Debtor's wife, as it would be unreasonable for a defendant to count on such an award until it is actually granted. Finally, Cimenian's pre-discharge threat is circumstantial evidence of the motives behind his subsequent suit against the Debtor's wife. More importantly, the threat presumably would have greatly amplified the coercive effect on the Debtor of the subsequent law suit against the Debtor's wife, as Cimenian had made clear to the Debtor that he would only be suing the Debtor's wife, if the Debtor failed to pay the debt, which was subsequently discharged.

Thus, Cimenian's suit arguably placed the Debtor between a rock and hard place: risk incurring substantial legal fees and the possibility of his wife losing the suit, or

---

**9.** The parties disagree as to the meaning behind "your client" in the Gannett letter. The Debtor maintains that Cimenian was threatening to pursue the Debtor's wife if the Debtor did not resolve Cimenian's claim, while Cimenian maintains that he was simply stating he would pursue his claims against the

Debtor's wife if *she* did not resolve Cimenian's claims against her. However, this question is of no matter with respect to the Panel's inquiry, as the bankruptcy court must assume the truth of all facts alleged for purposes of deciding a Rule 12(b)(6) motion. *See Thomas*, 542 F.3d at 948.

pay the discharged debt. *See In re Diamond*, 346 F.3d at 227–28. Regardless of whether the Debtor can ultimately prevail on his amended complaint, the bankruptcy court should not have dismissed it for failure to state a claim upon which relief can be granted. *See id.* The allegations the Debtor set forth in the amended complaint constitute a "plausible entitlement to relief." *See Twombly*, 127 S.Ct. at 1967.

### B. Motion for Fees and Costs

 Bankruptcy Rule 8020, which adopts Rule 38, grants this Panel authority to award an appellee costs and fees if we determine that the appeal is frivolous. *See* Fed. R. Bankr.P. 8020. Rule 8020 provides as follows:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

*Id.* Imposing sanctions under Bankruptcy Rule 8020 is a two-step process. *Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 734 (1st Cir. BAP 2002). First, the Panel must determine whether the appeal is frivolous. *Id.* Second, if the Panel determines that the appeal is frivolous, we must then examine whether the procedural requirements of Rule 8020 are met. *Id.*

There is no formula for determining whether an appeal is frivolous; several factors may be considered. *Id.* Some of these factors are: the appellant's bad faith, whether the argument presented on appeal is meritless *in toto*, and whether only part of the argument is frivolous. *Id.* Additionally, the Panel will consider whether the appellant's argument addresses the issues on appeal, fails to cite any authority, cites inapplicable authority, makes unsubstantiated factual assertions, makes bare legal conclusions, or misrepresents the record. *Id.*

Here, Cimenian satisfied the procedural requirement by filing a separate motion. However, the appeal is not deficient in any manner that indicates frivolousness. Accordingly, reimbursement of Cimenian's costs and fees under Bankruptcy Rule 8020 is not appropriate in this case. *See id.*

### CONCLUSION

We have concluded that the bankruptcy court erred in dismissing the Debtor's complaint. Therefore, we **REVERSE** the order dismissing the complaint and **DENY** Cimenian's motion for fees and costs.