**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0504n.06
Filed: August 19, 2008

No. 07-1821

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MOE BARAK, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| A. ROBERT ZEFF, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | **O P I N I O N** |
| | ) | |

Before:  BOGGS, Chief Judge; MOORE and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiff-Appellant Moe Barak ("Barak") appeals the dismissal of his suit in the United States District Court for the Eastern District of Michigan on the ground of *forum non conveniens*, as well as the district court's denial of his motion for reconsideration without first granting a hearing and without implementing his request for discovery-related conditions on the dismissal.  We conclude that the district court did not abuse its discretion in dismissing the case and in denying Barak's motion for reconsideration without a hearing and without imposing Barak's requested conditions.  We therefore **AFFIRM** the judgment of the district court.

# I. FACTS AND PROCEDURE

## A. Factual Background

Barak is a citizen of Michigan, and Defendant-Appellee A. Robert Zeff ("Zeff") is a citizen of Connecticut and also maintains a residence in Florida.

This action arises out of personal and financial disputes between two former brothers-in-law who entered into an ill-fated business partnership with the aim of developing a jai alai complex in Torrejon, Spain. In 1984, Barak and Zeff incorporated Madrid Torrejon Jai Alai, S.A. ("Madrid"); the activities involved in forming the corporation took place in Michigan and in Spain. That same year, Madrid purchased land in Torrejon, Spain. In 1986, Barak and Zeff signed an agreement acknowledging that Zeff would advance $425,000 for expenses related to the Torrejon land, that this outlay would entitle Zeff to the first $425,000 in proceeds from the development of the land, and that profit in excess of that amount would be divided fifty-fifty between Barak and Zeff.

Unfortunately for the brothers-in-law, interest in the sport of jai alai waned in the late 1980s, forcing Madrid to hire Spanish accountants, attorneys, and brokers to evaluate the tax and regulatory implications of selling the Torrejon property. A 1992 agreement provided for the distribution of net profits from the sale of the land in the following manner: forty-nine percent to Zeff, forty-nine percent to Barak, and two percent to a third shareholder, architect Antonio Alonso de la Riva Conde ("Riva"). The 1992 agreement stated that Madrid would "return to the shareholders all the credits and advance payments of any kind that they had advanced to the company, in accordance with the existing agreement between the parties." Joint Appendix ("J.A.") at 18 (1992 Agreement at 2).

After navigating a complex process to rezone the Torrejon property, in mid-2006 Madrid entertained two offers from Spanish investment groups. Barak favored the offer from a company

called La Quinta. A majority of shareholders (Zeff and Riva) at a noticed general-shareholder meeting in Spain, however, decided to end negotiations with La Quinta because of concerns about the company's sincerity and ability to meet financial commitments in a timely manner. By the end of December 2006, Madrid closed the sale of the Torrejon property to a second company called Grupo Lar, thereby allegedly avoiding burdensome tax increases and regulatory liabilities. Madrid deposited Grupo Lar's first installment of 1.43 million euros in a "corporate, international bank account" located in London, England and discounted and then deposited in the same account the net total of three subsequent installments amounting to 9.41 million euros. J.A. at 120 (Zeff Decl. at ¶ 13); J.A. at 351 (Silvia Escartin Decl. at ¶ 5).

## B. Procedural Background

Before the close of the Torrejon property's sale to Grupo Lar, on October 4, 2006, Barak filed a complaint in the United States District Court for the Eastern District of Michigan, suing Zeff, alone, for common-law fraud and misrepresentation and for intentional infliction of emotional harm, and suing Zeff and Madrid, together, for deprivation of shareholder rights. On December 21, Barak filed an amended complaint that named Zeff but not Madrid as the defendant. The amended complaint alleged several acts of misconduct by Zeff, including: (1) Zeff's effort in August 2006 to persuade Barak to sign a document that would entitle Zeff to payment for various expenditures purportedly made on behalf of Madrid, which Barak believed included many personal expenses; (2) Zeff's wrongly holding himself out as the authorized representative of Madrid and decisionmaking contrary to the "best interests of all the shareholders," J.A. at 25 (Am. Compl. at ¶ 11); (3) Zeff's instruction to a real estate agent not to provide Barak with information about the sale of the Torrejon property; (4) the failure of Zeff's representatives to return a file of personal information that Barak

3

had loaned them; (5) Zeff's acceptance of an offer of sale providing a lesser amount to the shareholders than another offer; (6) Zeff's dismissal of Ernst & Young of Spain as Madrid's accounting firm and Zeff's substitution with his own personal accounting firm, done with the purpose of advancing Zeff's "efforts to claim illegitimate expenses as owing to him for either return of capital contributions or return of allowable expenses," J.A. at 27 (Am. Compl. at ¶ 18); and (7) Zeff's conduct of Madrid's business "without giving Barak adequate notice of meetings," J.A. at 27 (Am. Compl. at ¶ 19).

Zeff filed a motion to dismiss for *forum non conveniens*, or in the alternative, failure to join indispensable parties. After Barak filed a brief in opposition, and Zeff filed a reply brief, the district court dismissed the case on the basis that Spain is a more convenient forum to resolve Barak's claims. The district court concluded: "Despite Barak's characteri[zation] of his dispute with Zeff as one between individuals, this lawsuit really concerns a shareholder's conduct with respect to a corporation and the claim[s] of the corporation's shareholders to certain corporate profits." *Barak v. Zeff*, No. 06-14424, 2007 WL 1098530, at *3 (E.D. Mich. Apr. 12, 2007). The district court determined that the majority of relevant witnesses resided in Spain and that it would be easier for the witnesses to testify in their native Spanish, even if they spoke English, and that it would be expensive to transport the witnesses to Michigan. *Id.* at *4. The district court further determined that most of the documents relevant to the suit were located in Spain. *Id.* In weighing the public interests in the suit, the district court concluded that "there can be no doubt that Spain has a greater interest in the parties' dispute as it centers around a Spanish corporation and the sale of Spanish property to a Spanish investment group." *Id.* Lastly, the district court concluded that "Barak

specifically claims that Zeff violated Spanish law and a judge in Spain is in a better position than this Court to evaluate that country's laws." *Id.*

Barak filed a motion for rehearing or reconsideration, requesting that, notwithstanding the dismissal, the district court temporarily stay the case to allow Barak to depose four witnesses residing in the United States under the court's subpoena power and to compel Zeff to file answers to the discovery requests already served upon him. The district court denied Barak's motion for reconsideration without conducting a prior hearing. The district court concluded that Barak had failed to identify a "palpable defect" in its analysis that would warrant reconsideration pursuant to Eastern District of Michigan Local Rule 7.1(g)(3). *Barak v. Zeff*, No. 06-14424, 2007 WL 1599742, at *1 (E.D. Mich. June 4, 2007). Barak filed a timely notice of appeal.

## II. ANALYSIS

### A. Dismissal on the Basis of *Forum Non Conveniens*

#### 1. Governing Law

"A dismissal on *forum non conveniens* grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil* [*Corp. v. Gilbert*], 330 U.S. [501,] 508-09 [1947], reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006). The Supreme Court has provided guidelines for the kinds of private interests a district court should consider: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises . . . ; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Gulf Oil*,

5

330 U.S. at 508. Public interests the district court should consider include: congestion of the courts; the burden of jury duty "upon the people of a community which has no relation to the litigation"; the "local interest in having localized controversies decided at home"; and, in a diversity case, the advantage of holding the trial "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508-09.

We review the district court's dismissal of Barak's suit on the basis of *forum non conveniens* for "a clear abuse of discretion." *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 105 (6th Cir. 1989). "The *forum non conveniens* determination is committed to the sound discretion of the trial court. . . . [W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

## 2. Adequate Alternative Forum

The Supreme Court "presupposes" that "the defendant is amenable to process" in order for an alternative forum to be adequate. *Gulf Oil*, 330 U.S. at 507. The district court dismissed Barak's suit on the condition that Zeff submit to the jurisdiction of the Spanish courts, waive any statute of limitations defense, and stipulate that United States courts may enforce any final judgment in favor of Barak. *Barak*, 2007 WL 1098530, at *5. Furthermore, the record contains the declaration of Inigo Quintana, a Spanish attorney who attests that "Spanish courts recognize causes of action for breach of contract and tort, which would include actions based on fraud, deceit, and mispresentation"; that Spanish courts have jurisdiction over Madrid and Riva; and that Spanish courts would exercise jurisdiction over Barak's claims against Zeff where Zeff consented to the

6

jurisdiction of the Spanish courts.  J.A. at 179-80 (Quintana Decl. at ¶¶ 3-6).  There is no question, then, that the Spanish courts could exert jurisdiction over Zeff.

Barak nevertheless argues that Spain may not be available as an alternative forum because he is eighty-six years old and in precarious health and, in the case that he died, Spain's procedures for the heirs of an estate to pursue ongoing litigation are more burdensome than those in Michigan. Specifically, Barak argues that the heirs to his estate would be required to appear in Spanish court within five days of his death or ten days of a notice from the court.  Dismissal on the ground of *forum non conveniens* is inappropriate when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."  *Piper Aircraft*, 454 U.S. at 254. Spain's procedural requirement for the heirs of an estate to continue litigation is not overly burdensome and would not deprive Barak's estate of a satisfactory remedy.  Therefore, we conclude that Spain offers an adequate alternative forum.

### 3.  Weighing of the *Gulf Oil* Factors

#### a.  Private Interests

Barak's primary contention on appeal is that the district court gave inadequate weight to his private interest in litigating in his home forum:  the United States District Court for the Eastern District of Michigan.  In 1947, the Supreme Court held that a district court should not deprive a plaintiff of the advantages of his "home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience . . . or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermen's Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).  "Oppressiveness and vexation," however, are no longer

absolute prerequisites for dismissal on the ground of *forum non conveniens*. *Koster*, 330 U.S. at 524. In *Stewart*, we explained that the Supreme Court's *Piper Aircraft* decision had emphasized the centrality of convenience to the *forum non conveniens* inquiry as well as the discretion of the district court. The *Stewart* panel concluded that "there is no requirement in *Piper* . . . that the burden [on the defendant] be 'oppressive' [for dismissal on the ground of *forum non conveniens* to be warranted] . . . . Such a high standard would constitute a misreading of *Piper* and its progeny." *Stewart*, 865 F.2d at 106.

Most recently, however, we have turned away from stressing the language in *Piper Aircraft* regarding discretion to emphasize once again the holding of *Koster*. In *Duha*, we stated: "*In general*, the standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.'" 448 F.3d at 873-74 (emphasis added). The *Duha* opinion acknowledged that, following *Piper*, we had held "that in a case involving a U.S. citizen . . . the district court [does] not need to make a 'finding' that trial in the U.S. forum would be 'oppressive' or 'vexatious' to the defendants." *Id.* at 875 (quoting *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986)). The *Duha* majority reconciled its position with the precedent: "Our analysis in that case [*Kryvicky*] was consistent, however, with a substantially higher degree of deference for the choice of home-forum plaintiffs." *Id.* In sum, when reviewing the district court's dismissal for abuse of discretion, we must consider the high degree of deference afforded Barak's choice of his home forum. Yet, to affirm the district court's dismissal of Barak's suit on the basis of *forum non conveniens*, we do not require proof that Barak intended to oppress or vex Zeff by suing in the Eastern District of Michigan.

8

Barak argues that the district court did not adequately weigh private interests regarding his advanced age and poor health as well as his lack of fluency in Spanish. These are powerful interests, and we are sympathetic to Barak's difficult position. Were we reviewing this case de novo, we might have reversed the district court's decision on the *forum non conveniens* issue. The standard of review applicable in the instant case, however, requires us to afford greater deference to the district court's discretion. We conclude that the district court did not abuse its discretion in determining that the balance of private interests weighed in favor of dismissal.

Zeff's arguments for dismissal, with which the district court agreed, track the private interests outlined by the Supreme Court in *Gulf Oil*. First, Zeff has provided evidence that the bulk of the documents and records constituting necessary proof in the litigation are located in Spain, where Madrid incorporated and conducted business. The district court's inability to compel foreign third-parties to produce these documents also cuts in favor of dismissal. *Murray v. British Broad. Corp.*, 81 F.3d 287, 295 (2d Cir. 1996) (affirming dismissal on the basis of *forum non conveniens* when the district court "might not be able to compel third parties located in [a foreign country] to produce documents"). Second, the inability of United States courts to compel foreign witnesses, who form the majority of potential witnesses in the suit,[1] would seriously hamper the ability of the factfinder to determine the facts in this case. Even were the Spanish witnesses willing to testify in the United States, the district court acted within its discretion in considering the expense of bringing numerous, *willing* foreign witnesses to Michigan. *Barak*, 2007 WL 1098530, at *4. The Eighth Circuit has held upheld dismissal on the basis of *forum non conveniens* when considerations regarding

---

[1]The district court concluded that although Barak had named four potential United States witnesses, he did not describe even generally what purposes their testimony would serve. *Barak*, 2007 WL 1098530, at *4 n.1.

compulsory process and impleading cut in favor of the foreign jurisdiction, even when the majority of the proof was in the United States. *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062-63 (8th Cir. 1986). The basis for affirming dismissal is even stronger in the instant case, when concerns regarding compulsory process, travel costs, and access to proof all cut in favor of the alternative forum.

Although Barak has submitted the letter of a physician stating that he should not travel to Spain on account of his health, he has not presented any argument explaining why his interests cannot be represented by an attorney in Spain. While Barak argues that he would not be able to understand a trial in Spain because he does not speak Spanish, Zeff responds that there exists a countervailing interest in the trier-of-fact being able to understand the documentary evidence and witness testimony. Even if the interest regarding the factfinders' language competencies does not outweigh Barak's interest in comprehending his trial, it is one recognized factor supporting dismissal on the basis of *forum non conveniens*. *Panama Processes, S.A. v. Cities Serv. Co.*, 650 F.2d 408, 412, 415 (2d Cir. 1981) (upholding the dismissal of a suit on the basis of *forum non conveniens* when the district court considered among other factors "the fact . . . that a New York jury would be confronted with 14 years of corporate 'sonnets from the Portuguese' requiring translation").

Lastly, Barak contends that Zeff's private interests in holding the trial in Spain are mitigated by the fact that both parties in this case reside in the United States. We are concerned about Zeff's motivations in seeking to force a trial in Spain when he himself is a citizen of Connecticut and maintains a law office in Detroit, Michigan. Nevertheless, that Zeff resides in the United States does not diminish the significance of the location of the proof and the majority of the witnesses in Spain and the greater expense to Zeff if a trial were held in Michigan. *See Pollux Holding, Ltd. v. Chase*

10

*Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003) (holding that "a plaintiff's choice of forum [does not] deserve[] presumptive deference simply because the chosen forum is defendant's home forum"), *cert. denied*, 540 U.S. 1149 (2004); *Faber-Plast GmbH v. Kleinert*, 997 F. Supp. 846, 848 (E.D. Mich. 1998) (stating that "the fact that defendant is a Michigan resident who conducts business in this state does not necessarily mean that this is the proper forum *for this action*").

The instant case is most analogous to binding precedent that affirmed, rather than precedent that reversed, dismissal on the ground of *forum non conveniens*. In *Kryvicky*, the plaintiff brought a wrongful death action against a Scandinavian airline manufacturer related to the crash of an airplane near its scheduled destination of Madrid, Spain. 807 F.2d at 515. In addition to the fact that the site of the accident was in Spain and that the plaintiff and decedent lived in Spain at the time of the crash, the district court determined that several interests similar to those at issue in the instant case cut in favor of dismissal. These interests included: the location of evidentiary records in Spain, the fact that most of the witnesses resided in Spain, and the fact that United States courts could not implead Spanish aviation authorities. *Id.* at 516. Granted, the plaintiff in *Kryvicky* lived abroad and had fewer ties to the United States forum than Barak does. *See Duha*, 448 F.3d at 875 (commenting that "the actual ties to the home forum were much weaker in *Kryvicky* than in the present case"). Regardless, the balancing of interests by the district court in *Kryvicky*, which we affirmed, closely resembles that which the district court performed in the instant case.

By contrast, the instant case is distinguishable from *Duha*, the leading case in which we reversed a dismissal on the basis of *forum non conveniens*. In *Duha*, the United States citizen plaintiff filed a suit against his former employer, an Argentinian company, alleging causes of action related to his former employment in Argentina and to his termination. 448 F.3d at 868. Of great

11

significance, this court reversed the district court's dismissal on the ground that "the U.S. forum offer[ed] greater ease of access to the relevant documents than the Argentine forum because to date most documents have been produced from the U.S. or Canada and are written in English." *Id.* at 875-76. Furthermore, witnesses in the United States outnumbered those in Argentina, making it less expensive for the defendant company to transport its witnesses to the United States than it would be for the plaintiff to transport witnesses to South America. *Id.* at 877-78. In contrast to *Duha*, in the instant case the majority of the proof and witnesses are located in the foreign and not the home forum. We therefore conclude that the district court did not abuse its discretion in determining that the balance of private interests weighed in favor of a Spanish forum.

### b. Public Interests

The public interests at issue in the instant case include whether Spain or the United States has a greater interest in the litigation and whether the Eastern District of Michigan would need to apply Spanish law. Barak argues that the district court erroneously concluded that Spain had a greater interest in the litigation because Madrid's sole asset—the profit from the sale—is held in an international corporate account at a bank located in London, England. That Madrid's assets are no longer in Spain, however, does not wholly overwhelm Spain's interest in overseeing litigation regarding the management of a company incorporated in that country. *See*, *e.g.*, *Panama Processes, S.A.*, 650 F.2d at 409, 413-14. Furthermore, Barak has not presented any argument as to why the United States generally or the citizens of Michigan specifically would have an interest in the litigation, beyond the fact of Barak's United States citizenship. Trying the case in Michigan might unfairly burden a Michigan jury with no relation to the litigation.

Barak argues further that the district court prematurely decided that Spanish law would predominate in the case because "[s]ome of the law applied will be Michigan law (as relates to actions alleged to have been committed by Zeff in the United States)[;] some of the law will be Spanish law." Plaintiff-Appellant Br. at 20. Such a vague argument is not persuasive given that the district court explained with some specificity why it would need to apply Spanish law. The district court noted that Barak's amended complaint alleged that Zeff had sought to conduct a "wrongful distribution under Spanish law" *Barak*, 2007 WL 1098530, at *4 n.2 (quoting J.A. at 28 (Am. Compl. at ¶ 23)). The district court also stated that it would "need to interpret Spanish corporate law regarding notice and disclosure requirements in order to resolve Barak's claim . . . that he was not given adequate notice of shareholder meetings." *Id.* In addition, the district court stated that it would "need to interpret Spanish tax law to determine whether the Grupo Lar offer was in [Madrid's] best interest or whether it was contrary to the corporation's interest." *Id.* Even were the district court also to consider Michigan law in the course of the litigation, the district court did not abuse its discretion when it determined that the need to apply foreign law weighed in favor the alternative forum. *See Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984) (holding that a decision to dismiss on the basis of *forum non conveniens* "was not even close with respect to public interest factors" when the case would involve the application of foreign tort law unfamiliar to the district court). We therefore conclude that the district court did not abuse its discretion when it determined that public as well as private interests militated in favor of a Spanish forum.[2]

_____

[2]Zeff argues in the alternative that the district court should have dismissed the case pursuant to Federal Rule of Civil Procedure 19(b) because of failure to join an indispensable party. We do not need to reach this issue, however, because we conclude that the district court did not abuse its

13

**B. Denial of Reconsideration Without a Hearing**

We review for abuse of discretion the district court's denial of Barak's motion for reconsideration. *United States v. Brown*, 449 F.3d 741, 750-51 (6th Cir. 2006). Ignoring the appropriate standard of review, Barak argues that the district court erred by not holding a hearing on the issue of Barak's health. Barak's motion for rehearing or reconsideration, however, did not address the need for a hearing on Barak's health issues prior to a ruling on the motion. Instead, Barak requested only that the district court stay dismissal of the case for the limited purpose of allowing Barak to depose four witnesses residing in the United States and that the district court compel Zeff to answer the discovery requests already submitted to him. In his brief before the district court opposing Zeff's motion for dismissal, Barak argued that his health constituted a powerful private interest counseling against dismissal. Barak, however, makes his specific argument about the need for a hearing related to his health issues for the first time on appeal and, therefore, we consider the argument waived. *McClain v. Northwest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 n.2 (6th Cir. 2006).

**C. Denial of Conditions Attached to Dismissal**

Barak argues that the district court abused its discretion by denying his motion for reconsideration without granting his requested condition that the district court allow limited discovery in the United States. Barak's contention is that Spanish courts could allow into evidence depositions by Barak of witnesses living in the United States. Zeff responds that Barak's argument constituted a novel ground for relief raised for the first time in Barak's motion for reconsideration and that, therefore, this court should treat the argument as waived. Zeff is correct as a general matter

---

discretion by dismissing the case on the basis of *forum non conveniens*.

14

that arguments raised for the first time in a motion for reconsideration are waived. *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 46 (6th Cir. 1984). Barak, however, could not know in advance that the district court would grant Zeff's motion for dismissal and thus did not know to request that the dismissal be limited by two conditions. We do not need to reach the issue of whether Barak waived his argument regarding the conditions on dismissal.

Assuming *arguendo* that Barak did not waive his argument that the district court should have placed conditions on the dismissal of the suit, we affirm the district court's denial of the requested conditions. The district court made a powerful policy argument that allowing Barak to conduct limited discovery under the supervision of the Eastern District of Michigan would establish a perverse incentive. The precedent would "encourage other plaintiffs to file their lawsuits in, what they know to be, inconvenient forums with the hope that the court will allow them to engage in discovery in the forum even though the case must be transferred elsewhere." *Barak*, 2007 WL 1599742, at *2. We therefore conclude the district court did not abuse its discretion when the court denied Barak's requested conditions of dismissal.

### III. CONCLUSION

Because the district court did not abuse its discretion in concluding that the Spanish courts constitute an available alternative forum and that the balance of both private and public factors weigh in favor of trying Barak's suit in Spain, we **AFFIRM** the district court's dismissal on the basis of *forum non conveniens*. Because Barak waived his argument that the district court should have granted a hearing regarding his health issues, we **AFFIRM** the district court's denial of Barak's motion for reconsideration. Finally, because the district court did not abuse its discretion in denying

15

Barak's requested conditions on dismissal, we **AFFIRM** the district court's refusal to grant these

conditions.  In sum, we **AFFIRM** the judgment of the district court.