In re Kevin M. MANNING and Sandra A. Manning, Debtors.

Kevin M. Manning, Plaintiff

v.

CitiMortgage, Inc., Defendant.

Bankruptcy No. 09–11120–BAH.
Adversary No. 12–1110–BAH.

United States Bankruptcy Court,
D. New Hampshire.

Signed Feb. 27, 2014.

provision permitting Mr. Cohen to charge attorneys' fees for *successfully* enforcing his rights under the lease.

**384**

Terrie Harman, Harman Law Offices, Portsmouth, NH, for Plaintiff.

Scott C. Owens, Harmon Law Office, Newton, MA, for Defendant.

## *ORDER*

BRUCE A. HARWOOD, Bankruptcy Judge.

In this adversary proceeding, Kevin M. Manning (the "Debtor" or "Plaintiff") seeks a determination that CitiMortgage, Inc. (the "Defendant") is liable for violating the discharge injunction contained in 11 U.S.C. § 524(a)(2). Before the Court are the Plaintiff's Motion for Partial Summary Judgment (Doc No. 36) (the "Plaintiff's Motion") and the Defendant Citi-Mortgage, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for Summary Judgment (Doc. No. 43) (the "Defendant's Motion"). The Court heard oral argument on these cross motions for summary judgment on February 18, 2014, and took the matters under advisement.

Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that a court shall "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a); Fed. R. Bankr.P. 7056.[1] The Supreme Court has defined an "issue of material fact" as a question which must be answered in order to determine the rights of the parties un-

---

1. The quoted language is taken from the 2010 revision of Rule 56(a), which replaces the previous Rule 56(c). In relevant part, it replaced "genuine issue of material fact" with "genuine dispute as to any material fact." To the extent any of the cited cases predate the change in the language of the rule, the change is not substantive.

der substantive law and which can only properly be resolved "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating there are no genuine disputes as to any material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party, who must present evidence establishing that a genuine dispute exists that would make it necessary to resolve the difference at trial, which can be done by the production of evidence on elements on which the non-moving party would bear the burden of proof at trial. *See id.* Summary judgment may be proper even though some material facts remain disputed if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law. "[T]he inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

The parties agree that no genuine dispute exists as to any material fact in the case. Accordingly, the facts are as follows. The Debtor filed a chapter 7 bankruptcy petition on March 31, 2009. He listed an interest in homestead property located at 166 Varney Street in Manchester, New Hampshire (the "Property") on Schedule A with a value of $190,000. At the time of the bankruptcy filing, the Defendant was listed on Schedule D as a creditor holding a mortgage secured by the Property in the amount of $146,198. The Plaintiff sought to reaffirm the mortgage while in bankruptcy. In May 2009, the Plaintiff signed a reaffirmation agreement (the "First Reaffirmation Agreement"). The First Reaffirmation Agreement was not filed with the Court. On September 10, 2009, an order issued discharging the Debtor (Doc. No. 28) (the "Discharge Order"). The Defendant was sent a copy of the Discharge Order on September 12, 2009 (Doc. No. 30).

Although the First Reaffirmation Agreement was not filed with the Court, the Debtor continued to make payments on the mortgage because he thought the debt had been reaffirmed. In December 2011, the Debtor decided to refinance his mortgage. At that time he learned that his credit report did not reflect the payments he had been making on the mortgage to the Defendant post-discharge. The Debtor retained counsel in order to get his post-discharge payments reported on his credit report. During discussions between the Defendant and both the Debtor's wife and the Debtor's attorney, agents of the Defendant told both of them that the Defendant would only report the post-discharge payments to the credit reporting agencies if the mortgage debt were reaffirmed, and that mortgage debt could not be reaffirmed until the Debtor paid off all amounts "due" under the mortgage.

The Debtor filed a motion on January 10, 2012 (Doc. No. 34) seeking to reopen his case "so that a reaffirmation agreement with the mortgage lender may be filed." The Court granted the motion (Doc. No. 36), with its standard caveat that "[a]ny reaffirmation filed shall be subject to the requirements of section 524(c) of the Bankruptcy Code." After the Debtor reopened his bankruptcy case, on or about February 21, 2012, he made an additional payment of $2,462, in reliance on the Defendant's earlier representations, in order to bring the mortgage current. The Debtor then executed a second reaffirmation agreement (the "Second Reaffirmation Agreement"), which he mailed to the Defendant. The Defendant executed the

Second Reaffirmation Agreement. The Second Reaffirmation Agreement was apparently sent to the Court but never placed on the docket. Neither the Debtor nor his attorney filed any motion seeking approval of the Second Reaffirmation Agreement. The Defendant did not report the Debtor's post-bankruptcy mortgage payments to the credit reporting agencies.

On November 1, 2012, the Debtor filed this adversary proceeding against the Defendant. In Count I of the Complaint, the Debtor contends that the Defendant violated the discharge injunction "by refusing to report the Plaintiff's payments to the credit reporting agencies unless he reaffirmed his debt with CitiMortgage." In Count II of the Complaint, the Debtor contends that the Defendant violated the discharge injunction "by refusing to report the Plaintiff's payments to the credit reporting agencies unless the Plaintiff made the payments necessary to bring his account current." Both parties seek summary judgment in their favor as to the Defendant's liability under 11 U.S.C. § 524(a)(2). Because there are no factual disputes, the Court must determine which party is entitled to judgment as a matter of law.

■ Section 524(a)(2) of the Bankruptcy Code provides:
A discharge in a case under this title—
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . .
11 U.S.C. § 524(a)(2).
A creditor violates the discharge injunction when it (1) has notice of the debt-

or's discharge; (2) intended the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor.

*Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6 (1st Cir. BAP 2009).

■ "[T]he scope of the injunction is broad, and bankruptcy courts may enforce it through 11 U.S.C. § 105." *Canning v. Beneficial Maine, Inc.*, 706 F.3d 64, 69 (1st Cir.2013). "[A]ny sanctions imposed for violations [are in] the nature of civil contempt." *Id.* "The burden of proof is on the former debtor to establish by clear and convincing evidence that [the] creditor violated the post-discharge injunction." *In re Pincombe*, 256 B.R. 774, 782 (Bankr. N.D.Ill.2000) (*quoted in In re Mahoney*, 368 B.R. 579, 590 (Bankr.W.D.Tex.2007)).

■ While a discharge in bankruptcy generally relieves a debtor from all prepetition debt, the debtor may voluntarily enter into an enforceable agreement with a creditor to reaffirm an otherwise dischargeable debt. *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000). "A reaffirmation agreement is only binding if made in compliance with the specific conditions set forth in § 524." *Id.* In this case, it is undisputed that the Debtor thought he had in fact entered into an enforceable reaffirmation agreement in 2009. Based on that assumption, he continued making mortgage payments to the Defendant.[2] It was only in 2011, when he attempted to refinance his mortgage and learned that his payments were not being reported to the credit reporting agencies, that he contacted the Defendant and apparently learned that the First Reaffirma-

**2.** The Court notes further that debtors are permitted to voluntarily repay debt that has been discharged. 11 U.S.C. § 524(f).

tion Agreement had not been filed with the Court and therefore was not enforceable. *See* 11 U.S.C. § 524(c)(1) and (3) (providing that a reaffirmation agreement is only enforceable if it "was made before the granting of the discharge" and "such agreement has been filed with the court").

The Debtor is the one who initiated contact with the Defendant in late 2011. The Defendant was not engaged at that time in any "act, to collect, recover or offset [the mortgage] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Only in response to the Debtor's inquiry did the Defendant suggest that the Debtor execute the Second Reaffirmation Agreement, which the Defendant indicated it would sign once the Debtor became current with the account. The Debtor contends that these actions violate the discharge injunction.[3]

In the Court's view, the steps taken by the Defendant did not violate the injunction. "Despite its broad scope, the discharge injunction does not enjoin a secured creditor from recovering on valid prepetition liens, which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance with state law." *Canning*, 706 F.3d at 69. Section 524(j) provides a specific exception to the discharge injunction for creditors who hold claims secured by a debtor's principal residence:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—

> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;

> (2) such act is in the ordinary course of business between the creditor and the debtor; and

> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j).

The Defendant's requests that the Debtor become current with his mortgage and that he sign another reaffirmation agreement—even one which, as here, would not be enforceable as a matter of law as it would be made after the issuance of the Discharge Order—fall within this exception. In this Court's view, the fact that the Defendant requested that the Debtor sign another reaffirmation agreement to essentially replace the First Reaffirmation Agreement does not take the Defendant outside of § 524(j)'s safe harbor.[4] Because the Debtor wanted to retain his home, the Debtor had every incentive to keep the payments on the mortgage current in order to avoid foreclosure by the Defendant. As the First Circuit Court of Appeals has explained:

> [A] debtor whose home is at stake is in an unenviable position. But a Chapter 7 discharge is not a walk in the park; it is 'a benefit that comes with certain costs.' ... If the debtor surrenders his home, he is entitled to erase all his debts (se-

---

**3.** The Debtor's real issue with the Defendant is that it failed to report his post-discharge mortgage payments to the credit reporting agencies, which apparently prevented him from refinancing the mortgage debt. The Court notes that the Debtor may have rights and remedies he can pursue in other forums with respect to any credit reporting issues. *See In re Birocco*, No. 09–12521, 2013 WL

5230704, at *3 (Bankr.D.R.I.2013) (noting that to address a credit history issue the debtor could provide a written explanation to the various credit reporting services).

**4.** None of the parties were able to explain at the hearing the whereabouts of the First Reaffirmation Agreement, or why it was never filed with the Court.

cured and unsecured) and start afresh. If, however, his paramount interest is in keeping his home and he cannot redeem the collateral, he must come to terms with the mortgagee. Bankruptcy, as life itself, is a series of tradeoffs.

*Jamo v. Katahdin Fed. Credit Union,* 283 F.3d 392, 400 (1st Cir.2002). Here, the Debtor attempted unsuccessfully to reaffirm his mortgage debt prior to issuance of the Discharge Order. Having failed to reaffirm the debt, the Debtor was forced to deal with the Defendant post-discharge if he wanted to continue residing in his home.

The Court cannot find that the Debtor has shown by clear and convincing evidence that the Defendant's actions, taken in response to inquiry by the Debtor, violated the discharge injunction. As the holder of a claim secured by the Debtor's residence, the Defendant was protected by § 524(j) when it requested that the Debtor become current on the mortgage. While the Defendant should not have requested that the Debtor enter into the Second Reaffirmation Agreement as it would not have been enforceable, the Debtor, or at least his attorney, should have realized this request was futile. *See* Doc. No. 43 (order dated April 26, 2012, disapproving a reaffirmation agreement between the Debtor and another one of his creditors as the agreement was apparently made and filed after the granting of the debtor's discharge). Because the Defendant is permitted to take steps in the ordinary course of its business to make sure the mortgage is current and because the Debtor should have known that he needed to keep his payments current in order to avoid in rem relief, the Defendant's actions cannot be found coercive and therefore do not violate the discharge injunction.

For the reasons outlined above and those articulated at the hearing on the cross motions, the Court finds that the Defendant is entitled to judgment as a matter of law. Accordingly, the Plaintiff's Motion is hereby denied, and the Defendant's Motion is hereby granted. The Court will issue a separate judgment consistent with this order.