Alexis Ramirez ROSADO, a/k/a Alexis Ramirez, and Elsie E. Berrios Salgado, a/k/a Elsie Enid Berrios Salgado, a/k/a Elsie E. Berrios, Debtors.

Alexis Ramirez Rosado and Elsie E. Berrios Salgado, Appellants,

v.

Banco Popular De Puerto Rico, Appellee.

BAP NO. PR 16–016
Bankruptcy Case No. 11–02825–BKT

United States Bankruptcy Appellate Panel of the First Circuit.

January 4, 2017

Aníbal Medina Ríos, Esq., on brief for Appellants.

José F. Cardona Jiménez, Esq., on brief for Appellee.

Before Feeney, Cary, and Fagone, United States Bankruptcy Appellate Panel Judges.

Fagone, U.S. Bankruptcy Appellate Panel Judge.

Alexis Ramirez Rosado and Elsie E. Berrios Salgado (collectively, the "Debtors") appeal from the bankruptcy court's order denying their motion seeking the imposition of sanctions for contempt against Banco Popular de Puerto Rico ("Banco Popular") under § 105, on account of an alleged violation of the discharge injunction.[1] They also seek to appeal from the bankruptcy court's subsequent refusal to reconsider that order. We **AFFIRM** both orders.

## BACKGROUND

The Debtors filed for chapter 7 relief in March 2011. In their schedules, they indicated they owned two properties, their residence and a duplex, both located in Bayamón, Puerto Rico. They valued the residence at $138,000.00 and the duplex at $125,000.00. On Schedule D, they listed Banco Popular as the holder of a $91,258.00 lien on the residence, and a $78,055.00 lien on the duplex. In their Statement of Financial Affairs, the Debtors listed Banco Popular as the plaintiff in two foreclosure proceedings pending in the

Puerto Rico Court of First Instance, Superior Court of Bayamón (the "local court") one involving the residence (in which judgment entered in March 2003), and the other concerning the duplex (in which judgment entered in March 2009). Although both judgments entered years before the filing of the Debtors' chapter 7 petition, neither foreclosure had progressed to a sale as of the petition date.

Banco Popular filed a proof of claim, asserting a secured claim of approximately $84,000.00. Subsequently, Banco Popular filed a motion for relief from stay (the "Stay Relief Motion"), alleging the Debtors had failed to make post-petition payments on a certain note and mortgage. About six months later, the bankruptcy court entered an order granting the Stay Relief Motion. Thereafter, in April 2015, the bankruptcy court issued an order granting the Debtors a discharge under § 727 (the "Discharge Order").

On January 25, 2016, the Debtors filed a motion for an order of contempt (the "Contempt Motion") against Banco Popular pursuant to § 105, asserting that the bank continued efforts to foreclose using the "ordinary foreclosure" method, an *in personam* remedy. This, according to the Debtors, constituted a violation of the § 524(a)(2) discharge injunction. The Debtors elaborated that Puerto Rico's statutory scheme governing foreclosures provides three ways to foreclose a mortgage: "the summary foreclosure proceeding, the civil action for foreclosure, and the ordinary civil action for collection of money." According to the Debtors, only the summary foreclosure proceeding is an *in rem* remedy; the others necessarily involve an at-

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Rule" are to the Federal Rules of Civil Procedure. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

tempt to recover a debt as an *in personam* liability. Thus, the Debtors contended that after the entry of the Discharge Order, Banco Popular should have "filed a summary foreclosure procedure." In addition, the Debtors maintained that Banco Popular's foreclosure judgments were void because each contained a determination of the Debtors' personal liability.

Despite everything it said about various methods of foreclosure under Puerto Rico law, the Contempt Motion did not identify any conduct, other than the continuance of the foreclosure proceeding, by Banco Popular.[2] No letter, telephone call, or communication emerged from the allegations of the Contempt Motion which might have given rise to a violation of the discharge injunction. Nonetheless, the Debtors alleged that Banco Popular's conduct caused them damages, "affected their quality of li[f]e," and exacerbated their health problems.

Banco Popular countered that after obtaining relief from the automatic stay, it "informed" the local court that it intended to proceed exclusively *in rem*, that it waived any right to proceed *in personam*, and that it would not seek to collect a deficiency from the Debtors. It also requested leave to file exhibits to its objection in Spanish. To that end, it attached two Spanish-language documents to the objection.

On February 3, 2016, the bankruptcy court denied the Contempt Motion without conducting a hearing. The court's order (the "Order Denying Contempt") provides: "Upon Banco Popular['s] reply filed at docket 129, the motion filed by DEBTOR[S] requesting entry of order of con-

tempt under 11 U.S.C. § 105 (docket # 128) is hereby denied." The Order Denying Contempt did not address Banco Popular's request for leave to file Spanish-language documents or indicate to what extent, if any, the court considered those documents.

Twelve days later, the Debtors filed a motion for reconsideration (the "Reconsideration Motion"), without identifying the legal authority upon which they relied for the requested relief. They acknowledged that Banco Popular informed the local court that it was proceeding exclusively *in rem* and waived any right to collect from the Debtors personally. The Debtors contended, nonetheless, that Banco Popular's representations in the local court did not operate to "convert" the foreclosure action to an *in rem* proceeding, and they reiterated that it continued to rely on the wrong foreclosure statute.

On March 16, 2016, the bankruptcy court entered an order denying the Reconsideration Motion (the "Order Denying Reconsideration"), reasoning that such motions "must not be used as a vehicle to relitigate matters already litigated and decided." The court added that "Rule 59(e) is not intended to give an unhappy litigant one additional chance to sway the judge."

This appeal followed.[3] Although the Debtors identified only the Order Denying Contempt in their notice of appeal, when they filed the notice electronically they linked the docket entry to both the Order Denying Contempt and the Order Denying Reconsideration. Additionally, they referenced and included the Order Denying Reconsideration in their statement of is-

---

**2.** Although there is a single, fleeting reference in the Contempt Motion to an auction scheduled for January 26, 2016, the record does not reveal whether that foreclosure occurred as planned, or even at all.

**3.** The notice of appeal was timely as to the Order Denying Contempt and the Order Denying Reconsideration. See Fed. R. Bankr. P. 8002(a), (b).

sues, designation of the record, and opening brief.

On appeal, the Debtors argue that they established a prima facie case for contempt by alleging that Banco Popular knew of the Discharge Order and intentionally engaged in conduct that violated it. The Debtors continue to maintain that Banco Popular should have employed the Puerto Rico statute governing an *in rem* proceeding post-discharge.[4] They also contend that: (1) the acceptance of Spanish-language documents by the bankruptcy court constitutes reversible error; (2) the bankruptcy court improperly characterized the Reconsideration Motion as an attempt to re-litigate matters already decided; and (3) they were entitled to a hearing on the Contempt Motion and the Reconsideration Motion.

Like the Debtors, Banco Popular largely reasserts the arguments it presented in the bankruptcy court proceedings. It adds: (1) contrary to the Debtors' assertion, under Puerto Rico law, there are three recognized ways for a mortgagee to proceed *in rem*; (2) its use of Spanish-language documents in the proceedings below was proper; and (3) the Panel lacks jurisdiction to consider the merits of the Order Denying Reconsideration, as the Debtors neglected to identify that order in their notice of appeal.

## JURISDICTION

Before addressing the merits of an appeal, we must determine the threshold issue of whether the Panel has jurisdiction, even if the litigants have not raised the issue. Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540,

546–47 (1st Cir. B.A.P. 2005) (citing Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (1st Cir. B.A.P. 1998)). The Panel has jurisdiction to hear appeals from a final judgment of the bankruptcy court. See 28 U.S.C. § 158(a)-(c).

To determine our jurisdiction, however, we must first decide if both the Order Denying Contempt and the Order Denying Reconsideration are properly before us. Because the Debtors did not identify the Order Denying Reconsideration in their notice of appeal, the question is whether our jurisdiction extends to that order. See St. Peter v. Hutchings (In re Hutchings), No. MW 10–078, 2011 WL 4572017, at *2 (1st Cir. B.A.P. May 25, 2011). Banco Popular argues that it does not, and accordingly, elected not to brief the merits of the omitted order (apart from arguing that the bankruptcy court properly declined to conduct a hearing on reconsideration).

In Devila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 504 (1st Cir. B.A.P. 2005), the Panel addressed whether the inclusion of the reconsideration order and the omission of the underlying order in the notice of appeal precludes review of the underlying order. The Panel concluded the notice of appeal embraced the merits of both orders. See id. Its decision was facilitated, however, by the parties' agreement that the appeal included both orders when questioned at oral argument. See id. There is no such consensus here.

The First Circuit encourages us to "construe notices of appeal liberally and examine them in the context of the record as a whole," recognizing "that the core

---

4. The Debtors never articulated how, under their theory, Banco Popular should have converted the foreclosure actions to *in rem* proceedings. We can only infer that the Debtors' contention is that Banco Popular should have first asked the local court to vacate the two foreclosure judgments, and then started over using a different type of foreclosure—a contention for which they have provided no legal support.

purpose of a notice of appeal is to 'facilitate a proper decision on the merits.'" Batiz Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3 (1st Cir. 2002) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "[W]e are not limited to the four corners" of the notice of appeal. Kotler v. Am. Tobacco Co., 926 F.2d 1217, 1221 (1st Cir. 1990), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3019, 120 L.Ed.2d 891 (1992). "In light of these principles, it is not surprising that courts faced with poorly drafted notices of appeal occasionally have been known to rescue the technically defaulted portion of an appeal." Batiz Chamorro, 304 F.3d at 3.

■ Here, when the Debtors filed their notice of appeal, they linked the event to both the Order Denying Contempt and the Order Denying Reconsideration in the court's electronic filing system. Additionally, they referred to both orders in their statement of issues and in their designation of record, which they filed within the 14–day deadline. See Fed. R. Bankr. P. 8009. They then went on to brief both orders. Thus, the Debtors' intent to appeal both orders was manifest from the totality of their submissions, notwithstanding the omission of the Order Denying Reconsideration from the notice of appeal. Under these circumstances, undertaking appellate review of both orders would not unfairly prejudice Banco Popular. Indeed, Banco Popular never moved to strike the Debtors' statement of issues or the designation of record, see, e.g., Fed. R. Bankr. P. 8009(e), although it did raise the jurisdictional issue belatedly in its brief. While we conclude that our jurisdiction encompasses the Order Denying Reconsideration as well as the Order Denying Contempt, a word of warning is in order. Like the First Circuit, we caution that "such rescue missions are not automatic, and litigants will do well to draft notices of appeal with care." Batiz Chamorro, 304 F.3d at 3.

■ Having concluded that both orders are on appeal, we must assess their finality. The Order Denying Contempt is a final order. See United States v. Monahan (In re Monahan), 497 B.R. 642, 646 (1st Cir. B.A.P. 2013) (citing Canning v. Beneficial Me., Inc. (In re Canning), 462 B.R. 258, 263 (1st Cir. B.A.P. 2011), aff'd 706 F.3d 64 (1st Cir. 2013)); see also In re Glaspie, 410 B.R. 261, 266 (E.D. Mich. 2007) (ruling bankruptcy court's denial of debtor's motion for contempt for violation of the discharge injunction is a final, appealable order). Because the Order Denying Contempt is final, so, too, is the Order Denying Reconsideration. See In re Hutchings, 2011 WL 4572017, at *2 (stating "[a]n order denying reconsideration is a final appealable order if the underlying order was a final appealable order and together [they] end the litigation on the merits") (citation omitted) (internal quotations omitted).

We now turn to the merits of the two disputed orders.

## STANDARD OF REVIEW

■ "The denial of a motion for contempt is reviewed ... for abuse of discretion." Champlin v. Hallisey, No. 95–1030, 68 F.3d 455, 1995 WL 620979, at *1 (1st Cir. Oct. 19, 1995) (citations omitted); see also In re Baer, No. 11–8062, 2012 WL 2368698, at *3 (6th Cir. B.A.P. June 22, 2012) (stating that bankruptcy court's determination that creditor did not violate discharge injunction is reviewed for abuse of discretion). We also review the Order Denying Reconsideration for abuse of discretion. In re Monahan, 497 B.R. at 646 (citation omitted). "Abuse of discretion exists when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant

weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." Berliner v. Kusek (In re Kusek), 461 B.R. 691, 696 (1st Cir. B.A.P. 2011) (citing Ameriquest Mortg. Co. v. Nosek (In re Nosek), 609 F.3d 6, 9 n.4 (1st Cir. 2010)).

## DISCUSSION

### I. The Discharge Injunction Standard: Section 524(a)(2)

■■■■ Section 524 establishes the discharge injunction. See 11 U.S.C. § 524; see also Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 8 (1st Cir. B.A.P. 2015). Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). "[T]he scope of the injunction is broad, and bankruptcy courts may enforce it through [ ] § 105 . . . ." Canning v. Beneficial Me., Inc. (In re Canning), 706 F.3d 64, 69 (1st Cir. 2013); see also Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444–45 (1st Cir. 2000) (stating bankruptcy courts may invoke § 105 to enforce the discharge injunction). Bankruptcy courts are empowered "to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524." Bessette, 230 F.3d at 445 (citations omitted). "[A]ny sanctions imposed for violations [are] in the nature of civil contempt." In re Canning, 706 F.3d at 69 (citation omitted).

■■■■ " 'The burden of proof is on the former debtor to establish by clear and convincing evidence that [the] creditor violated the post-discharge injunction.' " In re Best, 540 B.R. at 9 (quoting Manning v.

CitiMortgage, Inc. (In re Manning), 505 B.R. 383, 386 (Bankr. D.N.H. 2014)). To prevail on a § 524(a)(2) claim, a debtor must establish that the creditor " '(1) ha[d] notice of the debtor's discharge . . . ; (2) intend[ed] the actions which constituted the violation; and (3) act[ed] in a way that improperly coerc[ed] or harass[ed] the debtor.' " Bates v. CitiMortgage, Inc. (In re Bates), 844 F.3d 300, 304, 2016 WL 7229754, at *2 (1st Cir. 2016) (quoting In re Best, 540 B.R. at 9). "We assess whether conduct is improperly coercive or harassing under an objective standard—the debtor's subjective feeling of coercion or harassment is not enough." Id. at 304, *3 (citing Pratt v. G.M.A.C. (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006); Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (1st Cir. B.A.P. 2009)). While there is no "specific test to determine whether a creditor's conduct meets this objective standard," the circuit considers "the facts and circumstances of each case, including factors such as the immediateness of any threatened action and the context in which a statement is made." Id. (citation omitted) (internal quotations omitted). An action is coercive when it is "tantamount to a threat," or places the debtor "between a rock and a hard place" in which he would lose either way. Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2003) (citation omitted) (internal quotations omitted).

■■■■ Moreover, the discharge injunction "includes all types of collection activity such as [ ] letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." Delgado Laboy v. FirstBank P.R. (In re Delgado Laboy), A.P. No. 09–00047, 2010 WL 427780, at *5 (Bankr. D.P.R. Feb. 2, 2010) (citations omitted). Although broad, "the discharge injunction [ ] does not prohibit ev-

ery communication between a creditor and debtor—only those designed to collect, recover or offset any [discharged] debt as a personal liability of the debtor." In re Best, 540 B.R. at 9 (quoting In re Gill, 529 B.R. 31, 37 (Bankr. W.D.N.Y. 2015)) (internal quotations omitted). Thus, " 'a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor.' " Id. (quoting In re Reuss, No. DT–07–05279, 2011 WL 1522333, at *2 (Bankr. W.D. Mich. Apr. 12, 2011)).

## II. The Standard Applied

By asserting their claim under § 524(a)(2), the Debtors undertook the burden of demonstrating clearly and convincingly that Banco Popular: (1) had notice of their discharge; (2) intended the actions which constituted the violation; and (3) improperly coerced or harassed them to pay a discharged debt. See In re Lumb, 401 B.R. at 8. Clear and convincing proof requires "an abiding conviction that the truth of ... factual contentions [is] 'highly probable.' " Colorado v. New Mexico, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984) (citation omitted); see also In re Sarafoglou, 345 B.R. 19, 24 (Bankr. D. Mass. 2006) (stating "clear and convincing means highly probable or reasonably certain or both") (citations omitted).

The first two elements under § 524(a)(2) are not in dispute here. The third element, however, is problematic. Although the Debtors stressed that Banco Popular continued to foreclose under the wrong state statute, they never alleged that its conduct constituted impermissible coercion or harassment.[5] By failing to allege coercion or harassment, the Debtors omitted an essential element of a § 524(a)(2) violation in this circuit.

Not only is there an absence of any allegation that Banco Popular engaged in coercive or harassing tactics in an effort to recover a discharged debt from the Debtors or property that is not encumbered by its lien, but the record is also devoid of any facts from which the trial court might have inferred such conduct. Indeed, the Debtors failed to point to any letter, communication, or act that took place post-discharge that was violative of the discharge injunction. What the record does reveal, however, is that Banco Popular unequivocally disavowed any intent to pursue the Debtors personally and that its collateral had significant value, sufficient to satisfy its claim in full. Thus, the record reveals post-discharge efforts by Banco Popular to recover the value of its collateral, and nothing more. We discern no ploy to extract payment from the Debtors personally. Missing here is the "very damning evidence" necessary to overcome the legitimate economic purpose supporting Banco Popular's actions. See In re Schlichtmann, 375 B.R. 41, 98 (Bankr. D. Mass. 2007). On this record, the Debtors simply did not meet their burden of establishing coercion or harassment clearly and convincingly.

We need not dwell on Puerto Rico's statutory scheme governing foreclosure and whether Banco Popular proceeded under the incorrect statute, although the Debtors urge us to do so. Even assuming that Banco Popular proceeded under the wrong statute, as we have previously stated, "bad acts that do not have a coercive effect on the debtor do not violate the discharge." In re Lumb, 401 B.R. at 7 (citation omitted). "[T]he presence of some ... procedural impropriety or error in

---

5. Even on appeal, the Debtors recite only two elements as necessary for a prima facie case under § 524(a)(3) and ignore the third—coercion.

connection with [a] creditor's action will not give rise to a violation of the discharge injunction if the objective effect is not to coerce payment of a discharged debt[.]" Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1308 (10th Cir. 2008).

Nor is it necessary under these circumstances to consider the Debtors' argument that the bankruptcy court committed reversible error by permitting Banco Popular to submit Spanish-language documents, although we are mindful that federal litigation must be conducted in English. Dávila v. Corporación de Puerto Rico Para La Difusión Pública, 498 F.3d 9, 13 (1st Cir. 2007) (citation omitted). This is true because the Contempt Motion was facially deficient; the Spanish-language documents could not alter that inescapable conclusion.

We are unpersuaded by the Debtors' assertion that the bankruptcy court erred when it denied the Contempt Motion without a hearing. Not only is that argument unsupported by any legal authority, but it is made for the first time on appeal, the Debtors having neglected to request a hearing at any time in the proceedings below. See Abdallah v. Bain Capital LLC, 752 F.3d 114, 120 (1st Cir. 2014) (ruling arguments raised for the first time on appeal are waived) (citation omitted). In any event, both parties had the opportunity to submit papers regarding their positions and their submissions created no disputed factual issues. Therefore, the bankruptcy court's denial of the Contempt Motion without a hearing did not constitute a denial of due process. See Morales–Feliciano v. Parole Bd. of P.R., 887 F.2d 1, 6–7 (1st Cir. 1989) (holding due process was afforded by finding contempt "on the papers" where, as here, there were "no disputed factual matters that required an *oral* proceeding" and there was no request for a hearing) (citation omitted); Commodity Futures Trading Comm'n v.

Premex, Inc., 655 F.2d 779, 782 n.2 (7th Cir. 1981) (ruling due process did not require evidentiary hearing when documentary evidence established contempt and defendants failed to demand hearing or assert any material issue of fact); see also Zilog v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 n.11 (9th Cir. 2006) (observing "where the facts are not in dispute, no hearing need be held") (citation omitted).

In light of all of the foregoing, we conclude that the bankruptcy court did not abuse its discretion when it denied the Contempt Motion.

## III. The Order Denying Reconsideration

The Debtors did not identify the rule upon which they relied in the Reconsideration Motion. However, "[d]epending on the time that the motion is served, a motion to reconsider or vacate may be treated either as a motion to alter or amend the judgment" under Rule 59(e), made applicable by Bankruptcy Rule 9023, "or as a motion for relief from judgment" under Rule 60(b), made applicable by Bankruptcy Rule 9024. Ross v. Garcia (In re Garcia), 532 B.R. 173, 180 (1st Cir. B.A.P. 2015) (citation omitted). Because the Debtors filed the Reconsideration Motion within 14 days of the issuance of the Order Denying Contempt, it is properly treated as a motion to alter or amend a judgment under Bankruptcy Rule 9023. Id. (citation omitted).

Courts " 'have consistently stated that a motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources.' " BAC Home Loans Servicing LP v. Grassi, No. EP 11–010, 2011 WL 6096509, at *6 (1st Cir. B.A.P. Nov. 21, 2011) (quoting Lopez Jime-

nez v. Pabon Rodriguez (In re Pabon Rodriguez), 233 B.R. 212, 220 (Bankr. D.P.R. 1999), aff'd, 17 Fed.Appx. 5 (1st Cir. 2001)). "In practice, [R]ule 59(e) motions are generally denied because of the narrow purpose for which they are intended." Id. (citations omitted). In order to be successful on a Rule 59(e) motion, the moving party must establish "a manifest error of law or present newly discovered evidence." Landrau–Romero v. Banco Popular de P.R., 212 F.3d 607, 612 (1st Cir. 2000) (citation omitted). "The moving party cannot use a Rule 59(e) motion to cure its procedural defects or to offer new evidence or raise arguments that could and should have been presented originally to the court." Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 250 (1st Cir. B.A.P. 2008) (citation omitted).

Here, the Debtors failed to establish a manifest error of law, nor did they present any newly discovered evidence which would warrant the extraordinary relief of reconsideration. Furthermore, their argument that they were entitled to a hearing on reconsideration is waived, as the Debtors failed to request a hearing in the proceedings below. See Barak v. Zeff, 289 Fed.Appx. 907, 915 (6th Cir. 2008) (ruling appellant who makes "argument about the need for a hearing" for the first time on appeal waives that argument). Even if they had preserved this issue for appeal, their argument would nonetheless fail as Rule 59(e) does not contain a hearing requirement.

The bankruptcy court's statements about motions for reconsideration and Rule 59(e) were correct, and are worth repeating here. A motion for reconsideration is a weapon that should not be deployed reflexively by the losing party in a contested matter or an adversary proceeding. We recognize that lawyers are duty-bound to advocate zealously on behalf of their clients. But not every adverse order or judgment is predicated on a manifest error of law and the instances of newly discovered evidence are few and far between. This particular motion was not a close call. The bankruptcy court did not abuse its discretion when it denied reconsideration summarily.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Order Denying Contempt and the Order Denying Reconsideration.